UNITED STATES *v.* MONTEVERDE & PARODI, INC., PARODI ERMINIO & Co. (No. 4143) [1]

United States Court of Customs and Patent Appeals, May 2, 1938

*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for appellee.

[1] C. A. D. 2

[Oral argument April 14, 1938. by Mr. Donohue and Mr. Tuttle]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:[2]

This is an appeal from a judgment of the United States Customs Court, Third Division, sustaining two protests of appellees against the assessment by the collector at the port of San Francisco of an additional 10 per centum ad valorem duty on certain mushrooms imported from Yugoslavia in 1933. Said assessment was made under the provisions of section 304 of the Tariff Act of 1930, the collector being of the opinion that the merchandise was not marked as required by said section. Section 304 of said tariff act reads in part as follows:

SEC. 304. MARKING OF IMPORTED ARTICLES.

(a) MANNER OF MARKING.—Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, in such manner as to indicate the country of origin of such article, in accordance with such regulations as the Secretary of the Treasury may prescribe. Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. * * *

(b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof.

Before the Customs Court the protests were consolidated for the purposes of trial. Appellees introduced the testimony of one witness, Blinn, a customs broker, and the Government introduced the testimony of one Dimpfel, an examiner of merchandise at the port of San Francisco.

It appears from the record that the merchandise consisted of dried mushrooms packed in linen bags, each bag holding 45 pounds. The linen bags were enclosed in outer wooden containers, two bags being enclosed in each container. The mushrooms were not themselves marked. The outer containers were stenciled with the name of the country of origin, Yugoslavia. The linen bags were not marked, but each bag was closed with a stout linen cord wrapped around the mouth of the bag, and to this cord there was attached a tag upon which there was printed the name of the country of origin, the contents of the bag, and the net weight.

'Appellees' witness Blinn testified in part as follows:

Q. Was there any marking on the linen bags contained in the cases?—A. There was no marking on the bags, themselves.

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

Q. How were the bags closed or fastened together?—A. The bags were closed with a stout cord wrapped around the mouth of the bag.

Q. And was anything tied to the cord?—A. And to the cord there was a tag, what ordinarily would be a shipping tag. It is a heavy cardboard tag and there is a reinforcing hole in the tag.

Q. About how large was that tag?—A. About four inches, four and a half inches by two and a half inches.

Q. Was there any printing or writing on that tag?—A. The tags were printed, in a printing press, showing the contents, the nature of the contents of the bag, the net weight, and the country of origin.

Q. That is, it showed Yugoslavia as the country of origin?—A. The exact printing, I think, was raised and showed the country of origin, Yugoslavia.

Q. Was that printing on the tags clear?—A. I would say it was very clear.

\*     \*     \*     \*     \*     \*     \*

X Q. Mr. Blinn, is it correct that in order to open the bags and get the contents therefrom it would be necessary to remove this cord?—A. In this particular kind of a bag, I would say, yes.

X Q. The bags you examined in this case.—A. Yes.

X Q. And if the cord were removed the tag that was attached would come off; is that correct?—A. That is right.

X Q. The tag was attached to the cord and not to the bag?—A. Yes.

X Q. There was no printing on the bags at all?—A. No.

Appellant's witness Dimpfel testified that he examined the involved merchandise. He further testified as follows:

Q. Will you describe the manner in which the linen bags were marked that contained the mushrooms that were covered by this importation?—A. The linen bags were closed with a cord. Attached to the cord was a tag indicating they were the product of Yugoslavia.

Q. There was no marking on the linen bags, themselves?—A. No, sir.

The Customs Court in its decision stated:

At the trial testimony was introduced showing that the mushrooms were imported in linen bags packed in cases, each case containing two bags having 45 pounds of mushrooms therein. The cases contained the word "Yugoslavia" stenciled thereon. The bags were not marked with the name of the country of origin on the bags, but to each bag a heavy cardboard tag was attached having the name of the country of origin printed thereon.

In *Asiam, Inc.* v. *United States*, 25 C. C. P. A. —, T. D. 49065, the court held that barrels, the immediate containers of cherries, having attached thereto a paper label containing the name of the country of origin of the merchandise printed thereon were sufficiently marked to comply with the statutory requirements. In the concurring opinion it is stated that the statutory requirement for permanent marking applies to the articles and not to the containers.

On the authority of the decision cited, we hold that the merchandise covered by these suits was sufficiently marked to indicate the country of origin thereof. The protests are therefore sustained. Judgment will be rendered for the plaintiff.

In our decision in the case of *Asiam, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 68, T. D. 49065, relied upon by the Customs Court, the merchandise involved consisted of cherries packed in barrels. On one head of each barrel there was tacked, by four tacks, a circular paper label, about 7¾ inches in diameter, and upon the

opposite end of each barrel there was tacked a small oblong paper label about 4¼ inches by 3 inches in measurement. Upon each of these labels the name of the country of origin appeared.

In that case the Government urged, as it urges here, that said marking was not "as nearly indelible and permanent as the nature of the article will permit," the Government contending that, where the article itself is not capable of being marked, its immediate container must, under said section 304, be marked in the same manner as would be required upon the article, if capable of being marked. Appellant there, as do appellees here, contended that indelible or permanent marking was not required with respect to containers. We did not find it necessary to decide that question in the *Asiam* case, for we held that the marking was sufficient under either construction.

As in said case, so in the case at bar we do not find it necessary to construe said section 304 with respect to the above contention of the Government, for we hold that the linen bags, being the immediate containers of the mushrooms, were not marked at all. The evidence on behalf of the appellees clearly so states. The tag was attached to a loose cord which was wrapped around the mouth of the bag, and when the bag was opened the cord, with the tag, was entirely removed from the bag.

In the case of *American Burtonizing Co.* v. *United States*, 13 Ct. Cust. Appls. 652, T. D. 41489, in construing section 304 of the Tariff Act of 1922, the predecessor of the section here under consideration, the court said:

Obviously, the purpose of section 304, which goes into great detail as to how the marking shall be done, was to require a marking such as would be understood by purchasers of foreign-made goods as giving definite and reliable information as to the country of origin. * * *

In the case of *William Camp Co.* v. *United States*, 24 C. C. P. A. (Customs) 142, T. D. 48623, we quoted with approval the foregoing in construing section 304 of the Tariff Act of 1930.

In the case of *Kraft Phenix Cheese Corp.* v. *United States*, 22 C. C. P. A. (Customs) 111, T. D. 47103, in construing said last-named section, we said:

It seems quite plain that the Congress was attempting to do no more than to secure a proper marking of the imported article or its container *in such a way as would make it manifest to the purchaser* that the goods were foreign goods. [Italics supplied.]

We also there stated, after quoting the pertinent part of section 304 (b) of the Tariff Act of 1930:

The ordinary meaning of this language is not that both article and container must be marked or an additional duty will accrue, but that one or the other must be marked or this will happen. If the Congress had been intending to make the

additional duty apply for failure to mark both, different language would have been employed. Going, then, no farther than the ordinary meaning of the words extends, it appears that the congressional intent was to make it obligatory, in order to avoid the imposition of additional duty, to mark either the article or the container on every occasion.

Under section 304 of the Tariff Act of 1922, if the article was such that it could not be marked, there was no imposition of additional duty for failure to mark the container. The present act makes it more necessary for the importer to so mark his goods that, when they come into the commerce of this country, they may be readily distinguished.

In the case at bar it is clear that, in order to enable a prospective purchaser of the merchandise to inspect the same, the tag must be first removed with the cord, leaving no indication whatever upon the linen bags respecting the country of origin of their contents. Surely this is not such a marking as the statute requires, regardless of whether the provision of section 304 reading, "Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit," applies to containers or not.

The case of *Asiam, Inc.* v. *United States, supra*, relied upon by the trial court, is easily distinguishable from the case at bar. In that case, if either head of the barrel was removed for the inspection of its contents, there would have remained upon the opposite end a marking of the container in compliance with the statute. If the tags here involved, showing country of origin, had been directly attached to the linen bags, so that the bags could be opened without the removal of the tags, a different question would have been presented, which it is not necessary here to consider.

In the case before us, neither the mushrooms nor their immediate containers were marked at all, and the collector properly assessed the additional 10 per centum duty required by section 304 of the Tariff Act of 1930.

The judgment of the Customs Court, Third Division, is *reversed.*

BLAND, Judge, concurs in the conclusion.